# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| WESS DEASE | ) | 3:05-cv-0294-LRH (VPC) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF U.S. MAGISTRATE JUDGE** |
| STEVEN MacARTHUR, ET AL. | ) | |
| | ) | |
| Defendants. | ) | May 30, 2007 |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary judgment (#64).  Plaintiff opposed (#69/70/71) and defendants replied (#72).  The court has thoroughly reviewed the record and the motions and recommends that defendants' motion (#64) be granted.

## I.  HISTORY & PROCEDURAL BACKGROUND

Plaintiff Wess Dease ("plaintiff") is a prisoner at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#20).  Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging that defendants violated his Eighth Amendment right against cruel and unusual punishment and his Fourteenth Amendment right to due process.[1]  *Id*.  Plaintiff names as defendants Dr. Steven McArthur, former ESP Medical Director; John Pearce, NDOC Management Analyst I; and the State of Nevada.  *Id*.  Plaintiff requests a declaratory judgment that defendants violated his constitutional rights, an injunction requiring defendant

---

[1] The court dismissed plaintiff's Eighth Amendment claim on December 12, 2005 (#21).

1   MacArthur to restore plaintiff's inmate account funds, and punitive damages for his loss and

2   emotional distress.  *Id.*

3       Plaintiff's complaint stems from his involvement in a 2003 fight at ESP with another

4   inmate, Lawrence Atwood.  *Id.*  The prison disciplinary committee found plaintiff guilty of

5   fighting, and among other sanctions, ordered him to pay restitution to cover inmate Atwood's

6

7   medical expenses.  *Id.*

8       In count I, plaintiff alleges that defendant MacArthur intentionally violated his right to due

9   process by failing to refund the money taken from his inmate account.  *Id.*, p. 4.  Plaintiff further

10  alleges that defendant Pearce forwarded forms authorizing unlawful restitution.  *Id.*  Plaintiff

11  claims to be in possession of an affidavit from inmate Atwood which states that his jaw was wired

12  shut for six and a half weeks, he was given a liquid diet and Ibuprofen ("IBU"), and that after he

13

14  returned to ESP, he did not receive further medical treatment.  *Id.* Plaintiff also claims that even

15  though defendants stated that the jaw surgery was "expensive," inmate Atwood's injuries could

16  not have been severe because the prison waited six weeks before providing medical treatment to

17

18  inmate Atwood.  *Id.*, p. 9.

19      In count II, plaintiff alleges that defendants violated his due process rights similar to count

20  I when, on December 12, 2003, he received a charge of over $6,000 against his account "for on-

21  going medical treatment," even though inmate Atwood had not received any treatment in over

22  four months.  *Id.*, p. 5.  Plaintiff alleges that the State of Nevada violated his rights by failing to

23  reverse the errant medical charges after being informed of wrongdoing.  *Id.*  Plaintiff makes

24  similar allegations in count III regarding a February 2, 2004 charge for $6,000, *see id.*, p. 6, and

25

26  in count IV regarding a June 15, 2005 charge for $607.15.  *Id.*, p. 6-A.

27      After reviewing the parties' evidence, the court finds that the following facts are not in

28

dispute.  On May 29, 2003, plaintiff was involved in a fight with inmate Atwood (#69, p. 1).  A correctional officer fired a warning shot into the air to restore order.  *Id*., pp. 1-2.  Plaintiff was removed to administrative segregation and received a notice of charges.  *Id*., p. 2.  On May 31, 2003, prison officials asked plaintiff if he would like to attend his notice of charges hearing.  *Id*.  Plaintiff refused to attend.  *Id*.  On June 11, 2003, prison officials asked plaintiff if he would like to attend his disciplinary hearing.  *Id*.  Plaintiff again refused to attend.  *Id*.  The hearing officer found plaintiff guilty, *in absentia*, of two major violations and one minor violation based on the testimony of correctional staff (#64, Exhibit D).  Plaintiff was sentenced to 365 days in disciplinary segregation and ninety days loss of phone, appliances, and canteen, and he was ordered to pay restitution for inmate Atwood's medical care.  *Id*.  The disciplinary committee's findings specified "you will be assessed restitution for any costs arising from this incident.  Until the amount of restitution is determined, your account will be frozen."  *Id*.  The exact amount of the restitution was not noted on the hearing form.  *Id*.  Plaintiff did not appeal the hearing decision (#64, Exhibit A, Plaintiff's Deposition, pp. 13-14).

ESP medical evaluated inmate Atwood on May 29, 2003, and then sent him to the High Desert State Prison ("HDSP") infirmary (#63).  On June 12, 2003, inmate Atwood received jaw surgery from an outside physician.  *Id.*  His stay in the HDSP infirmary spanned fifty-nine days (from May 29, 2003 to August 1, 2003).  *Id.*  He also received a follow-up visit with the outside surgeon in late July.  *Id.*  The total cost of inmate Atwood's medical care was $14,075.62.  *Id.*  On four separate occasions – October 7, 2003, December 12, 2003, February 2, 2004, and June 15, 2005 – the prison assessed more than $14,000 against plaintiff's inmate account to cover the medical costs of repairing inmate Atwood's broken jaw and teeth (#20; *see also* #63; *see also* #64, p. 3).

On February 29, 2004, plaintiff sent a kite to NDOC accounting inquiring why his inmate account had a restitution balance in the amount of $7,432.89 (#64, Exhibit E). Inmate Services replied, "You were found guilty of the incident on 5/29/03, the other I/M was found not guilty. When medical charges come in they are posted to your account. Anytime the victim goes to medical for treatment of something resulting from this incident the charges will be posted to your account." *Id*. On March 18, 2004, plaintiff sent another kite to accounting stating that he had spoken with inmate Atwood, who told plaintiff he had not received medical treatment since August 2003 (#64, Exhibit F). Plaintiff inquired as to why he was now being charged more restitution. *Id*. Inmate Services replied, "Inmate Services only post the charges we receive from medical administration. You will need to send an inquiry to medical administration." *Id*. On April 8, 2004, plaintiff filed an informal grievance, complaining that he had attempted to resolve the issue through medical and central administration to no avail, that he was concerned he was being charged for someone else's altercation, and that he had spoken with inmate Atwood who told him he had not received medical treatment in six months (#64, Exhibit G). Plaintiff requested an investigation. *Id*. The response was, "Per John Pearce, central medical accounting, you broke the other inmates [sic] jaw and a bunch of teeth- expensive surgery. So far it is above $14,000. In addition, if that inmate has any problems with the jaw in the future you are going to be assessed for that also." *Id*. In his May 12, 2004, first level grievance, plaintiff protested that jaw surgery does not cost $14,000 and complained that he was not allowed to view the specific medical costs and charges. *Id*. The warden gave the same response as in the informal grievance. *Id*. Finally, in response to his second level grievance, the Chief of Medical Fiscal Services stated, "Discussion of another inmate's medical care is inappropriate. The charges assessed for the injuries caused by you are correct." *Id*.

The court notes that the plaintiff is proceeding *pro se*.  "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt."  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II.  DISCUSSION & ANALYSIS

### A.  Discussion

#### 1. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(C).  In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  In inmate cases, the courts must

> [d]istinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, __ U.S. __, 126 S.Ct. 2572, 2576 (2006).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden,

the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

### B. Analysis

Initially, the court addresses plaintiff's numerous arguments that there was not enough evidence to find him guilty of fighting with Inmate Atwood (#69, pp. 2-3). Plaintiff admits that the prison served him with an administrative segregation notice of charges on May 29, 2003, the day of the fight (#69, p. 2). Plaintiff further admits that although he knew about both hearings, he refused to attend the notice of charges hearing on May 31, 2003, as well as his disciplinary hearing on June 11, 2003. *Id*. Stating, "I assumed the charge would be just for fighting. Nothing more," plaintiff now protests that he was found guilty "in absentia" without testimony from either of the participants to the fight and on only the testimony of the correctional staff. *Id*. Plaintiff further argues that the written disciplinary report "did not provide a 'full picture' of the incident." *Id*. Plaintiff admits that he did not appeal the disciplinary decision, but claims this is because he never received a notice of the disposition of the disciplinary hearing. *Id*.; *see also* #69, Exhibit A, Plaintiff's Deposition, p. 12. Plaintiff does admit that he eventually received a notice of the results of the hearing after asking for the results from a case worker, but claims it was after his time to appeal had expired. *Id*., p. 13-15. Plaintiff also admits the disciplinary hearing disposition stated that he had been ordered to pay restitution, but did not state how much the restitution would be. *Id*. Plaintiff filed kites and grievances after receiving the disciplinary

6

results from his case worker.  *Id*.  Plaintiff now claims self-defense in the fight with inmate Atwood.  *Id*., pp. 15-16.

In his complaint, plaintiff does not allege a violation of his due process rights with relation to the disciplinary hearing (#20).  In its December 12, 2005 screening order, this court specifically noted that this case does not involve the issue of plaintiff's guilt or innocence concerning the fight:

> In allowing Dease's claims to survive screening, however, this court emphasizes that it does not sit in appellate review of state administrative proceedings.  The issue in this case is not whether the defendants can justify or substantiate the restitution charges allegedly imposed against or collected from Dease.  Rather, Dease must show, to prevail on his claims, that the defendants failed to afford him constitutionally sufficient procedural protections given the type of deprivation in question.

*Id*.  Therefore, in considering this motion, it is of no moment to this court how much evidence prison officials had in finding plaintiff guilty of fighting and ordering plaintiff to pay restitution as a punishment.  This court's concern is whether plaintiff's procedural due process rights were violated with respect to assessing the charges to plaintiff's account.[2]

## 1. Defendant State of Nevada

Defendants argue that the Eleventh Amendment bars suit against the State of Nevada (#64, pp. 10-11).  The Supreme Court has interpreted the Eleventh Amendment to bar suit against a state by citizens of the state.  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996).  Plaintiff testified that he was informed after he filed his complaint that he is prohibited from suing a state (#64, Exhibit A, Plaintiff's Deposition, p. 38).  The court grants summary judgment as to

---

[2] It is worth noting again that plaintiff had a number of opportunities to assert his innocence during his notice of charges and disciplinary hearings, both of which he refused to attend.  The court has little sympathy for an inmate who was afforded two hearings but voluntarily chose not to attend either one to defend himself.  That plaintiff now claims innocence of all charges is self-serving.

1   defendant State of Nevada.

2   **2. Defendant MacArthur**

3   Defendant MacArthur contends that plaintiff has failed to exhaust his administrative

4   remedies, that he was not personally involved in any of the alleged wrongful conduct, and that

5   he is immune to suit in his official capacity (#64, p. 8).

6   **a. Exhaustion**

7   The Prison Litigation Reform Act of 1996 ("PLRA") amended 42 U.S.C. § 1997e to

8   provide that "[n]o action shall be brought with respect to prison conditions under section 1983

9   of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

10   correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.

11   § 1997e(a) (2002). Although once within the discretion of the district court, the exhaustion of

12   administrative remedies is now mandatory. *Booth v. C.O. Churner*, 532 U.S. 731 (2001). All

13   available remedies must be exhausted before a complaint under section 1983 may be entertained.

14   *Id.* at 738. Those remedies "need not meet federal standards, nor must they be 'plain, speedy, and

15   effective.'" *Porter v. Nussle*, 534 U.S. 516, 524 (2002), *citing Booth*, 532 U.S. at 739-40, n.5.

16   Recently, the Supreme Court held that the PLRA requires "proper exhaustion" of administrative

17   remedies. *Woodford v. Ngo*, __ U.S. __, 126 S.Ct. 2378 (2006). "Proper exhaustion" is defined

18   as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses

19   the issues on the merits)." *Id.* at 2385 (citations omitted). The Court stated that "proper

20   exhaustion demands compliance with an agency's deadlines and other critical procedural rules

21   because no adjudicative system can function effectively without imposing some orderly structure

22   on the court of its proceedings." *Id*.

23   Defendant MacArthur argues that because plaintiff failed to specifically name him in his

administrative grievances, plaintiff has failed to exhaust as to defendant MacArthur. The Supreme Court recently held that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Jones v. Bock*, __ U.S. __, 127 S.Ct. 910, 923 (2007). The Court stated that the level of detail required to "properly" exhaust under *Woodford* varies between prison systems, and that it is the prison's requirements, not the PLRA's, that define the boundaries of proper exhaustion. *Id*. at 922; *see also Butler v. Adams*, 397 F.3d 1181, 1183 (9th Cir. 2005) (holding that the PLRA requires only that a prisoner avail himself of the administrative process provided by the prison).

Defendant MacArthur references plaintiff's deposition testimony in which plaintiff states that he does not recall that his grievances specifically complain of defendant MacArthur's actions (#64, p. 8). Defendant MacArthur does not submit NDOC's exhaustion regulations in order for the court to review the requirements. Defendant MacArthur did submit copies of plaintiff's grievances (#64, Exhibit G). The inmate grievance forms simply require the prisoner to make a "statement;" none of the forms contains a requirement that the prisoner name all the parties involved in his or her complaint. *Id*. While none of the grievances references defendant MacArthur specifically, the grievances concern plaintiff's claim that his account was wrongfully charged, and that he had attempted to resolve his claims through "medical and central." *Id*. The subject of the grievances is sufficient to exhaust the claims in plaintiff's complaint. *Id*. While it is possible that NDOC's administrative regulation regarding exhaustion requires inmates to specifically name all involved parties, the regulation is not before the court. Because the defendants failed to produce enough evidence to prove that plaintiff failed to properly exhaust, the court denies summary judgment as to defendant MacArthur on this ground.

///

**b. Personal Participation**

Defendant MacArthur also asserts that as ESP medical director, he had no personal involvement in the alleged violation of plaintiff's due process rights because he did not participate in plaintiff's disciplinary hearing, did not decide the amount of restitution, did not post charges to plaintiff's account, and did not answer plaintiff's kites to medical denying plaintiff information about the charges (#64, pp. 10-11). Plaintiff responds that "although ... Dr. MacArthur did not commit the due process violations, [he] became responsible for them when [he] failed to correct them in the course of [his] supervisory responsibilities" (#69, p. 4).

A person deprives another of a constitutional right for the purposes of section 1983 if that person "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which that person is legally required to do that causes the deprivation of which complaint is made." *Hydrick v. Hunter*, 466 F.3d 676, 689 (9th Cir. 2006) *quoting Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). There must be a causal connection by some kind of direct personal participation in the deprivation or by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury. *Id.* Supervisory officials are not liable for the actions of subordinates under a vicarious liability theory pursuant to 42 U.S.C. § 1983 unless "the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001).

In this case, there is no evidence that defendant MacArthur had anything to do with the restitution order or removing the funds from plaintiff's inmate account. Defendants' evidence demonstrates that defendant MacArthur was the medical director at ESP, in charge of inmate medical treatment (#64, Exhibit B, Responses 1-3). Plaintiff's complaint appears to be that

defendant MacArthur would not provide plaintiff with inmate Atwood's medical records or reverse the charges to his account. *Id*., Exhibit A, p. 38. However, evidence presented to the court demonstrates that it is not defendant MacArthur's responsibility to do either of these things. *Id*., Exhibit B; *see also id*., Exhibit C, Pearce Response Nos. 2 and 4. Moreover, pursuant to Institutional Procedure ("IP") 6.32, Inmate Charges for Medical/Mental Health Services, it is clear that the decision to charge restitution lies with the institutional disciplinary committee. *Id*., Exhibit H, sections 6.32.05 (5.3) and (5.6). The decision regarding whether to investigate and reverse medical charges is under the sole purview of NDOC Central Medical Administration. *Id*., section 6.32.06 (6.3)-(6.4). Plaintiff has not alleged, nor has he presented evidence, that defendant MacArthur is a member of either the institutional disciplinary committee or NDOC's Central Medical Administration (#69).

The court concludes that defendant MacArthur had no personal participation in the original restitution order or in removing funds from plaintiff's inmate account. The court grants summary judgement as to defendant MacArthur.

### 3. Defendant Pearce

Defendant Pearce maintains that: (1) he is entitled to qualified immunity for plaintiff's constitutional claims; (2) he is entitled to absolute immunity pursuant to N.R.S. 41.032 for plaintiff's state law claims, if any; (3) he did not violate plaintiff's due process rights because plaintiff received a pre-deprivation hearing for the original restitution decision and an adequate post-deprivation remedy after the restitution was assessed; (4) plaintiff's Fifth Amendment right to due process was not violated; and (5) that plaintiff is not entitled to punitive or emotional distress damages (#64).

///

11

### a. Right to Due Process

#### (1) Law

Generally, inmates are owed only the "minimum procedures appropriate under the circumstances." *Wolff v. McDonald*, 418 U.S. 539, 557 (1974).  In the disciplinary hearing context where there is a loss of liberty, the prison must give inmates, among other procedures, written notice of the charges against him, a written statement setting forth the basis for the disciplinary action taken against the prisoner, and the opportunity to call witnesses.  *Id.*

Additionally, an inmate has a constitutionally protected property interest in the funds in his prison account.  *Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir. 1984); *see also Scott v. Angelone*, 771 F.Supp 1064, 1067 (D. Nev. 1991).  Once a protected property interest is found, the court need only decide what process is due under the Fourteenth Amendment.  *Quick*, 754 F.2d at 1523.  This is a question of law.  *Id.*

The law provides that no due process violation occurs if the government *negligently* deprives an inmate of his protected property.  *Daniel v. Williams*, 474 U.S. 327 (1986) (*overruling Parratt v. Taylor*, 451 U.S. 527 (1981).  The Supreme Court has also held that an *unauthorized intentional* deprivation of property by a state employee does not constitute a violation the Fourteenth Amendment's procedural due process requirements provided the state makes available a meaningful post-deprivation remedy.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  This is because a state cannot provide a pre-deprivation hearing for a property loss that the state cannot predict will occur.  *Id.*, p. 532.  However, "post deprivation remedies do not satisfy due process where a deprivation of property is caused by conduct pursuant to established state procedure rather than random and unauthorized action."  *Id.* at 532.  In such a case, it is possible for a state to provide a pre-deprivation hearing because the state can anticipate when the

loss of property will occur. *Id*.

## (2) Analysis

Since it is clear that plaintiff has a constitutionally protected property interest in his inmate account funds, the only issue to is whether defendants afforded plaintiff sufficient due process before assessing charges to his account. Defendant Pearce's position is that plaintiff's disciplinary hearing was sufficient due process, but that plaintiff waived his rights because he refused to attend (#64, pp. 15-16). Plaintiff, on the other hand, maintains that (1) he never received the results of his disciplinary hearing so he was not initially afforded due process for the restitution order, and (2) that prior to any assessment against his inmate account, he should have been provided with an accounting of the medical charges so that he could challenge whether they were legitimate (#64, Exhibit A, Plaintiff's Deposition, pp. 34-36).

## (a) The Restitution Order

Pursuant to Nevada law, NDOC must establish regulations allowing it to deduct money from inmate accounts to repay the cost of "medical examination, diagnosis or treatment for injuries... inflicted by the offender upon himself or other offenders." N.R.S. 209.246(1)(b)(1). IP 6.32 allows for restitution "at the discretion of the institutional disciplinary committee" or by NDOC Central Medical Administration. *See* IP 6.32.05(5.3). Inmates "shall be charged restitution" for "injury inflicted by the offender to himself or others" and for "injuries related to altercations and fights." *Id*., section 5.4. Restitution is charged at specific rates, including $206 per day for an inpatient stay at any NDOC infirmary and "actual billed charges" for outside medical care. *Id*., section 5.5. The procedure specifically states "[f]or fights and altercations, the correct assignment of liability is the purview of the disciplinary committee – they have the means to investigate the circumstances of a fight or altercation and determine culpability at which time

the restitution amount will be assessed accordingly." *Id.*, section 5.6.

It is disputed as to whether plaintiff received a copy of the June 11, 2003 disciplinary hearing disposition, at which he was ordered to pay restitution for inmate Atwood's medical bills. Plaintiff maintains that he did not receive the results of the hearing until after he was assessed restitution for the first time and he wrote to a case worker to obtain a copy (#69, p. 2; #69, Plaintiff's Declaration, ¶ 11; #64, Exhibit A, Plaintiff's Deposition, p. 13). Plaintiff further testified that he did not file an appeal after he received a copy because he thought he was not allowed to do so since the time to appeal had passed (#64, Exhibit A, Plaintiff's Deposition, p. 13-14). Instead, plaintiff filed administrative grievances to inquire into the amounts that posted to his account. Defendants assert plaintiff's due process rights were met when plaintiff received the hearing results mandating restitution from his case worker (#64, p.3). That plaintiff chose not to appeal the decision is his own fault. *Id.*

While there is a dispute of fact as to whether plaintiff received the results of his disciplinary disposition, the court concludes that in this particular case, this disputed fact is not material. Plaintiff admits to fighting with Inmate Atwood such that a correctional officer had to fire a warning shot to stop the fight (#69, pp. 1-2). Plaintiff also does not deny breaking inmate Atwood's jaw and teeth.[3] Plaintiff was then offered *two* hearings regarding this matter – one hearing to re-classify him to administrative segregation and a subsequent disciplinary hearing. *Id.*, p. 2. Plaintiff refused to attend either hearing. *Id.* In one grievance filed after the hearings,

---

[3] While plaintiff now claims he fought Inmate Atwood only in self-defense, he did not assert such a claim at the time of the fight, and he does not deny that he broke inmate Atwood's jaw. Notably, it is this court's view that plaintiff essentially admitted his guilt when he stated in a kite to accounting, "First of all, as a result of said altercation, I come to expect some restitution. But over six months time, it has stretched out to twenty time [sic] the original amount" (#64, Exhibit F). Based on this statement, and plaintiff's statement to this court that he did not attend the hearings because "I assumed the charge would be for fighting. Nothing more," *see* #69, p. 2, the court concludes that plaintiff's self-defense claims are not credible.

plaintiff stated that he "refuse[d] to participate in a kangaroo court" (#69, Exhibit A).  When asked under oath a number of times, plaintiff could not present any justification for refusing to attend the hearings (#64, Exhibit A, Plaintiff's Deposition, pp. 12, 15, 17-20).  He did not testify that he was unavailable or ill; in fact, he gave no excuse at all other than to say "I changed my mind."  *Id*., p. 20.  Had plaintiff attended the disciplinary hearing, he would have received actual notice of the restitution order.

Moreover, plaintiff clearly received actual notice of the other punishments given to him by the disciplinary committee – the 365 days in disciplinary segregation and the 90 days loss of canteen, phone and appliances – because plaintiff served these punishments between June 11, 2003 and June 11, 2004 (#64, Exhibit D).  Plaintiff did not appeal any of these sentences.  If in fact it is true that plaintiff did not receive a copy of the disciplinary disposition in time to appeal, under the facts of this case, the court finds it highly unlikely that plaintiff would have appealed the order to pay restitution.

What is more, plaintiff *did* have an opportunity to be heard on the merits of the order to pay restitution.  Plaintiff filed kites and grievances after the restitution was assessed to his account (#64, Exhibits E, F and G).  Defendants did not tell the plaintiff they would not hear his grievances; instead, defendants researched the issue on its merits.  *Id*.  The prison informed plaintiff that he had broken inmate Atwood's jaw, that the surgery – and all the accompanying medical care – was expensive, and that the charges were correct.  *Id*., Exhibit G.  The defendants correctly did not provide plaintiff with a copy of inmate Atwood's medical records.

The court concludes that the plaintiff had three opportunities to be heard on these issues – his initial classification hearing, his disciplinary hearing, and the grievance process after the charges were assessed – and that plaintiff waived two of these opportunities voluntarily and was

heard on the merits during his third opportunity.  Plaintiff was offered sufficient due process.

### (b) The Restitution Amount

Defendant next argues that determining the actual amount of the restitution is not guided by a standard policy or procedure, and depends on many factors, including whether NDOC or outside physicians provide the medical care, testing requirements, physical therapy, and when the bills arrive at NDOC (#64, p. 16).  Defendant contends that as a result, the charges for medical restitution are similar to the "random and unauthorized" acts referred to in *Hudson*.  Since NDOC cannot predict the amount of the medical bills, an inmate will incur, it "cannot hold any type of meaningful pre-deprivation hearing." *Id*.  Based on this "random and unauthorized" acts analysis, only a post-deprivation remedy is appropriate. *Id*.  Defendant maintains that the prison grievance system is a sufficient post-deprivation remedy, that plaintiff has already received his due process rights through the grievance process, and that he merely disagrees with the results. *Id*.

In the alternative, defendant admits that "arguably, the NDOC has an opportunity to afford Plaintiff a pre-deprivation due process remedy before it charges him for restitution." *Id*., p. 18.  However, defendant contends that providing inmates with a pre-deprivation hearing would unreasonably burden prison resources. *Id*., pp. 17-19.  Defendant maintains that the post-deprivation remedy the prison currently offers is reasonably related to valid penological interests for several reasons. *Id*.  NDOC's policy of not providing a breakdown of medical bills is based on its interest in protecting the victim's confidentiality rights, and it would pose a significant administrative burden to require a pre-deprivation hearing as to the restitution amount each time NDOC charged restitution. *Id*.  Restitution is ordered very often and for numerous reasons, and because the restitution amount is frequently determined at different times, an inmate could end up receiving multiple hearings to challenge the amounts as they hit his account. *Id*.  Since

1    multiple hearings would be in addition to the original notice of classification and disciplinary

2    hearings, and this added burden would divert staff resources from normal operations, which, in

3    turn, would increase administrative overhead.  *Id.*  Defendant contends that a pre-deprivation

4    hearing provides no more protection than the post-deprivation remedy through the grievance

5    process, because by the time the restitution is actually assessed to the inmate's account, he will

6    already be on notice that it is going to occur as a result of his disciplinary hearing.  *Id.*  During

7    both the pre- and post-deprivation hearing, the inmate will receive the same evidence – a copy

8    of the redacted bill, "which speaks for itself."  *Id.*  Finally, a hearing might disclose sensitive

9    information about the victim, including the extent of injuries and the location of the victim, which

10   could open the victim up to future physical vulnerability.  *Id.*

11

12           Plaintiff's view is that he should not be required to pay the amounts due without first

13   receiving an itemized list of charges, and that without such a list, there is no way for him to

14   meaningfully challenge the legitimacy of such charges (#69).

15

16           The court concludes that defendant was not required to provide plaintiff with a pre-

17   deprivation hearing.  As noted above, plaintiff had a number of opportunities to challenge the

18   restitution order prior to the determination of the amounts.  Thus, plaintiff was on notice that he

19   would be required to pay restitution.  Moreover, the rates of restitution are clearly set out in IP

20   6.32 (#64, Exhibit H, Section 6.32.05 (5.5)).  As an NDOC inmate, plaintiff is responsible for

21   knowing his rights as contained in the posted prison regulations.  The daily rate for a stay in an

22   NDOC infirmary is $206 per day.  Inmate Atwood was required to stay for sixty days while he

23   received surgery and his jaw was wired shut, and this expense makes up the bulk of the charges

24   (#63).  The court has reviewed the medical charges and they appear to be reasonable, considering

25   the surgery and the lengthy infirmary stay.

26

27

28

1   Plaintiff's argument that he should receive a copy of the medical charges is incorrect.

2   Plaintiff is not entitled to a copy of another inmate's medical record, for a number of very

3   legitimate safety and security reasons.  Additionally, NDOC regulations require confidentiality

4   of inmate medical records (#64, Exhibit I, Administrative Regulation ("AR") 639.02 ("Inmates

5   are not allowed access to another inmate's medical file")).  The release of any medical records

6   could disclose information about the victim which could be used to the victim's disadvantage.

7   If the assailant knew  extent of the victim's injuries and the location of the victim were known

8   by the assailant, it could open the victim up to future injuries or blackmail.[4]

9

10   Also significant to the court is the burden a pre-deprivation hearing would place on the

11   prison system.  It is clear that if a hearing were required prior to each amount deducted or

12   assessed against an inmate account, this would create a tremendous administrative burden.

13   Restitution is ordered quite often for a variety of reasons, and because the amounts are sometimes

14   determined at different times for a single restitution order, this could result in inmates receiving

15   four or five hearings, in addition to the original classification and disciplinary hearings.  This

16   process would quite obviously divert the prison system's already limited resources from other

17   areas, possibly risking security and quality medical care, among other concerns.

18   Additionally, there is little, if no, difference between a pre- or post-deprivation hearing.

19   The court notes that there is already a procedure in place for the reversal of incorrect medical

20   charges (#64, Exhibit H, IP 6.32, Section 6.32.06).  An inmate presenting evidence of incorrect

21   charges is not required to pay those charges, whether they are never assessed (pre-deprivation),

22   or whether they are later reversed (post-deprivation).  The inmate receives the same evidence of

23

24

25

26

27   [4] Of course, it must be noted that the prison may have avoided suit had it provided plaintiff with the same type of limited/redacted breakdown of costs it provided in docket number 63.  This appears a reasonable and acceptable solution, without having to turn over confidential medical records.

28

medical charges in both a pre- and post-deprivation hearing. This policy is reasonably related to the legitimate penological interests discussed herein.

Plaintiff was provided (1) the opportunity for a classification hearing to challenge his involvement in the fight, which he refused; (2) a disciplinary hearing to challenge his involvement in the fight and the sentence imposed, including the order to pay restitution, which he refused; and (3) the opportunity to grieve the amount of the restitution, which was addressed on its merits. The court finds that plaintiff received sufficient due process. The court grants summary judgment as to defendant Pearce on plaintiff's due process claim.

**b. Absolute Immunity- State Law claims**

Defendant argues that he is entitled to absolute immunity pursuant to N.R.S. 41.032(1) for plaintiff's state law claims, if any (#64). In his complaint, plaintiff invokes this court's pendant jurisdiction (#20, p. 3). However, plaintiff fails to specifically plead a state law cause of action, although he mentions that defendants have converted his funds, made misrepresentations, acted fraudulently, and committed theft. Because plaintiff is acting *in pro se*, this court construes his state court cause of action as a conversion claim.

"Conversion is a 'distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights." *See Edwards v. Emperor's Garden Restaurant*, 130 P.3d 1280, 1287 (Nev. 2006), *citing Wantz v. Redfield*, 326 P.2d 413 (Nev. 1958). "Further, conversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge." *Evans v. Dean Witter Reynolds, Inc*., 5 P.3d 1043 (Nev. 2000) *citing Bader v. Cerri*, 609 P.2d 314, 317 n. 1 (Nev. 1980). A conversion will be found where a party makes an unjustified claim of title to personal property or asserts an

unfounded lien to said property which causes actual interference with the owner's rights of possession.  *Scaffidi v. United Nissan*, 425 F.Supp.2d 1159, 1168 (D. Nev. 2005) *citing Bader*, 609 P.2d at 317 n. 1.

Pursuant to N.R.S. 41.031, the State of Nevada has generally waived its immunity from suit, subject to certain exceptions.  N.R.S. 41.031(1).  N.R.S. 41.032 provides immunity to state officials regarding lawsuits "[b]ased on an act or omission of an officer, employee or immune contractor, exercising due care, in the execution of a statute or regulation... ."  N.R.S. 41.032(1).

The evidence demonstrates that defendant Pearce acted pursuant to N.R.S. 209.246 and NDOC regulations, including AR 639 and IP 6.32, in refusing to provide inmate Atwood's medical records and in assessing restitution against plaintiff's account (#64, Exhibit C, Responses 1-2).  Plaintiff does not refute this.  There is no indication, and plaintiff has submitted no evidence, that defendant Pearce acted with anything but due care.  The court concludes that defendant Pearce is immune to suit pursuant to N.R.S. 41.032(1) because he acted pursuant to state law and NDOC regulations, and grants summary judgment on plaintiff's conversion claim.

### d. Fifth Amendment

Defendant contends that plaintiff has failed to state a claim as to the Fifth Amendment because the Fifth Amendment applies only to the actions of the federal government (#64, p. 19). The due process clause of the Fifth Amendment and its equal protection component apply only to the actions of the federal government.  *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th cir. 2001).  Since plaintiff has alleged actions only by state government employees, the defendants' motion to dismiss plaintiff's Fifth Amendment claim is granted.

///

///

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that:

1.   Defendant MacArthur did not submit evidence to prove that plaintiff was required to name him on his administrative grievance forms and the court denies summary judgment for failure to exhaust administrative remedies.   However, defendant MacArthur did not personally participate in ordering plaintiff to pay restitution or removing funds from his account.   The court grants summary judgment as to defendant MacArthur.

2.   Defendant Pearce did not violate plaintiff's Fourteenth Amendment due process rights because plaintiff was afforded sufficient process pertaining to the order to pay restitution.   The court grants summary judgment as to plaintiff's due process claim.

3.   Defendant Pearce acted pursuant to state law and NDOC regulations in assessing restitution against plaintiff's inmate account, and plaintiff has presented no evidence that defendant Peace did not act with due care.   The court grants summary judgment as to plaintiff's conversion claim.

4.   There are no federal actions alleged here, therefore, the court grants summary judgment as to plaintiff's Fifth Amendment claim.

Therefore, the court recommends that defendants' motion (#64) be **GRANTED** as to all claims and all defendants.

The parties are advised:

1.   Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and

1  Recommendation" and should be accompanied by points and authorities for consideration by the

2  District Court.

3        2.    This report and recommendation is not an appealable order and any notice of appeal

4  pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's

5

6  judgment.

7                          **IV.  RECOMMENDATION**

8        **IT IS THEREFORE RECOMMENDED** that defendants' motion (#64) be **GRANTED**

9  as to all claims and all defendants.

10        **DATED:** May 30, 2007.

11

12

13  _____

14              **UNITED STATES MAGISTRATE JUDGE**

15

16

17

18

19

20

21

22

23

24

25

26

27

28